## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| LARENCE CISTRUNK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-82-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Larence Cistrunk on February 23, 2012, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on June 28, 2012. Plaintiff requests that the June 17, 2011 decision of the Administrative Law Judge to deny him disability insurance benefits be reversed or, alternatively, remanded for further proceedings. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 8, 2009, Plaintiff filed an application seeking a period of disability and disability insurance benefits, alleging a disability onset date of August 26, 2009. Plaintiff's claims were denied initially on March 9, 2010, and upon reconsideration on April 30, 2010. Thereafter, Plaintiff filed a written request for a hearing on June 1, 2010. A video hearing was held on June 17, 2011, before Administrative Law Judge ("ALJ") Michael Hellman, at which Plaintiff, his attorney, and vocational expert Glee Ann L. Kehr ("VE") appeared.

On July 18, 2011, the ALJ issued a decision denying Plaintiff's application. The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since August 26, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: coronary artery disease, status post heart attack with angioplasty, hypertension, and left hearing impairment (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he must avoid concentrated exposure to temperature extremes, humidity and excessive noise, and he is limited to occupations that do not require bilateral hearing capability and frequent verbal communication.

6.  The claimant is capable of performing past relevant work as a janitor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.   (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from August 26, 2009, through the date of this decision (20 CFR 404.1520(f)).

R. 19-24.

Plaintiff sought review of the ALJ's decision. However, on December 23, 2011, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.  Background

Plaintiff was born in 1948 and was 63 years old on the date of the hearing.  Plaintiff is educated through the ninth grade; he has not earned a high school equivalency degree.  Plaintiff's past relevant work consists of janitorial work.  Plaintiff's insured status expires on December 31, 2013.

### B.  Medical Evidence

On August 26, 2009, Plaintiff presented at the emergency room with chest pain, and an EKG revealed inferior wall acute myocardial infarction.  Dr. Vijay Shah, a cardiologist, diagnosed severe triple-vessel coronary artery disease and referred Plaintiff to surgeon Dr. Thach Nguyen.  That same date, Dr. Nguyen performed an angioplasty on Plaintiff's right coronary artery.

Plaintiff presented for a follow-up visit with Dr. Shah on September 16, 2009.  He reported that he still smokes and that he was doing well, did not have pain, and can walk.  The treatment notes report that he told Dr. Shah that he could walk 10-15 minutes easily.

On December 3, 2009, Plaintiff had a follow-up visit with Dr. Shah and denied any chest pain, shortness of breath, palpitations, dizziness, or lightheadedness.  He reported being able to walk ten to fifteen minutes easily and being more active "as compared to before."  AR 284.

On December 11, 2009, Dr. Shah filled out a form regarding Plaintiff's cardiac condition and, in response to a question specifically requesting the classification, assigned Plaintiff a Class I classification under the New York Heart Association's Functional Classification System.

On December 29, 2009, Plaintiff underwent a stress test for evaluation of coronary artery disease. However, because Plaintiff "could not exercise to adequate heart rate," the clinician induced stress pharmacologically. AR 308. The conclusion was negative electrocardiogram and a nuclear medicine report to follow. The impression of the final radiology report was "no definite evidence of stress induced ischemia," "evidence of prior inferolateral wall myocardial infarction," and left ventricular systolic function in the range of 55%. AR 286.

On December 30, 2009, Dr. Shah issued a report regarding Plaintiff's coronary artery disease based on a 2D echocardiogram pulse and color flow doppler and made the following conclusions: normal left ventricular wall motion and systolic function, normal diastolic function, normal right ventricular systolic function, and calcific disease of the aortic valve without any stenosis.

On February 19, 2010, consulting physician Dr. Kanayo Odeluga examined Plaintiff for the Disability Determination Bureau. Plaintiff's presenting complaint was coronary artery disease. Plaintiff complained of chest pain with exertion, such as walking for more than a block or less than five minutes. He explained that the pain is relieved with rest and taking nitroglycerin. Plaintiff denied shortness of breath, excessive perspiration, palpitation, or dizziness. Plaintiff had an essentially normal physical exam with normal muscle tone and no atrophy. However, he had difficulty hearing forced whisper from 6 feet behind on the left ear. Dr. Odeluga's impression was hypertension, coronary artery disease, myocardial infarction status post PTCA with stent, left hearing impairment, and hypercholesterolemia.

On March 9, 2010, state agency physician Dr. Richard Wenzler completed a Physical Residual Functional Capacity Assessment. Dr. Wenzler found Plaintiff capable of medium exertional work with the ability to lift fifty pounds occasionally and twenty-five pounds frequently

4

and to sit, stand, and walk for six out of an eight-hour workday with a limitation to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. He further imposed environmental limitations of avoiding concentrated exposure to extreme cold, extreme heat, humidity, fumes, dusts, odors, gases, and poor ventilation. In Section A6 of the form, Dr. Wenzler extensively cited the record evidence on which he based his conclusions. Dr. Wenzler gave Plaintiff limited credibility, finding that the alleged severity of his cardiac and hearing impairments is not supported by the current cardiology opinion and nuclear stress test. Dr. Wenzler gave controlling weight to Dr. Shah's December 11, 2009 Class I classification under the New York Heart Association's Functional Classification System.

On March 16, 2010, Plaintiff saw Dr. Shah for a follow-up visit. Plaintiff reported doing well. Plaintiff reported having no chest pain, shortness of breath, palpitation, or dizziness and having a fair exercise capacity. Dr. Shah assessed Plaintiff's coronary artery disease as stable. He noted that Plaintiff had undergone a stress test that did not reveal any ischemia.

On April 30, 2010, state agency reviewing physician Dr. Mangala Hasanadka affirmed Dr. Wenzler's assessment.

Overall, Plaintiff's subjective complaints post-surgery were shortness of breath, fatigue, chest pain, and tightness that worsen upon exertion.

### C.  Plaintiff's Testimony

Plaintiff testified that he did not complete high school and that his recent work was as a janitor. He was laid off from the janitorial job in 2008. Plaintiff received unemployment benefits for approximately one year. Plaintiff has not worked since his heart attack in August 2009.

Plaintiff testified that he lives with relatives and is capable or driving, bathing, shopping, dressing, and grooming himself. He shops about once a month and drives to visit his children every day. Plaintiff spends his time visiting his children, talking to friends or relatives, or "moping" around. Plaintiff testified that he is able to sit for a couple of hours at a time as long as he can adjust his position and move around while sitting. Plaintiff also is able to stand for about an hour if he is able to brace himself on something.

Plaintiff testified that since his heart attack, he has experienced shortness of breath and severe chest pain. Plaintiff's shortness of breath manifests itself when he walks or lifts, and it stops about thirty minutes after he sits to rest. Further, the chest pain manifests itself when Plaintiff exerts himself too much, such as walking too far, trying to lift something that he should not, or getting excited. Plaintiff testified that the pain dissipates between twenty and forty minutes after he sits down and does nothing else.

Plaintiff testified that Dr. Shah verbally instructed him to lift no more than ten pounds.

### D. Vocational Expert Testimony

A VE testified that Plaintiff's past work qualified as unskilled janitorial work with a medium exertional classification under the Dictionary of Occupational Titles, and medium to heavy as performed by Plaintiff. The ALJ asked whether someone with Plaintiff's vocational profile, but who (1) was restricted to medium exertional demands, (2) must avoid concentrated exposure to temperature extremes, humidity, and excessive noise, and (3) cannot perform a job requiring bilateral hearing capability or frequent communication, could perform Plaintiff's past work. The VE testified that such an individual could do janitorial work as it is customarily performed.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## DISCUSSION

Plaintiff contends that the ALJ erred by determining that Plaintiff was capable of performing medium work in the RFC finding and by improperly evaluating his credibility. The Commissioner responds that the ALJ's credibility finding was sufficiently explained in his decision and that substantial evidence supports the ALJ's finding of no disability. The Court considers each of Plaintiff's bases for remand in turn.

### A.  RFC Determination

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p at *5. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*.

In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that Plaintiff must avoid concentrated exposure to temperature extremes, humidity, and excessive noise and he is limited to occupations

10

that do not require bilateral hearing capability and frequent verbal communication.  Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

The Court is primarily concerned that the ALJ's RFC for medium work was improperly influenced by the great weight the ALJ gave to the opinion of Dr. Shah, Plaintiff's treating cardiologist, and specifically to Dr. Shah's assignment to Plaintiff of a Class I classification under the New York Heart Association's ("NYHA") Functional Classification System.  Dr. Shah gave Plaintiff this rating on a form he filled out regarding Plaintiff's cardiac condition.  The form asked: "Indicate the patient's NYHA classification (if known):".  AR 289.  Dr. Shah answered: "Class I." *Id*.  There is no explanation on the form as to what the Class I classification stands for or what functional limitations, as that term is used in the context of disability insurance benefits, flow from that classification.  As noted by the ALJ in his decision, based on research the ALJ conducted on the American Heart Association's website, the "functional capacity" of a person with heart disease with a NYHA Class I rating is described as follows:  "Patients with cardiac disease but without resulting limitation of physical activity.  *Ordinary physical activity* does not cause undue fatigue, palpitation, dyspnea, or anginal pain."  Classification of Functional Capacity and Objective Assessment, American Heart Association, http://my.americanheart.org/professional/StatementsGuidelines/ByPublicationDate/PreviousYear s/Classification-of-Functional-Capacity-and-Objective-Assessment_UCM_423811_Article.jsp (publ. 1994) (last visited Mar. 27, 2013) (emphasis added).  The same chart provides that the "Objective Assessment" for Class I is "no objective evidence of cardiovascular disease."  *Id*.  The Heart Failure

Society of America explains that the NYHA Classification system "relates symptoms to *everyday activities* and the patient's quality of life." *See* NYHA Classification–The Stages of Heart Failure, Heart Failure Society of America, http://www.abouthf.org/questions_stages.htm (emphasis added).

The NYHA Class I rating provides that "ordinary physical activity" does not cause cardiac symptoms. However, there is no indication in Dr. Shah's opinion, the cited article from the American Heart Association, or the ALJ's opinion whether "ordinary physical activity" encompasses the physical exertion required for a given level of sedentary, light, medium, or heavy work under the social security regulations. The ALJ does not discuss, much less cite, evidence that "ordinary physical activity" for someone with "heart failure" with this Class I rating equates to an ability to lift 50 pounds occasionally, to lift 25 pounds frequently, and to spend 6 hours on his feet standing or walking for a 63 year old man with a history of heart attack and coronary artery disease.

Plaintiff testified that he is able to sit for a couple of hours at a time as long as he can adjust his position and move around while sitting. Plaintiff also testified to being able to stand for about an hour if he is able to brace himself on something. Plaintiff explained that, since his heart attack, he has experienced shortness of breath and severe chest pain. His shortness of breath manifests itself when he walks or lifts, and it stops about thirty minutes after he sits to rest. Further, the chest pain manifests itself when Plaintiff exerts himself too much, such as walking too far, trying to lift something that he should not, or getting excited. Plaintiff testified that the pain dissipates between twenty and forty minutes after he sits down and does nothing else. Plaintiff's description of his daily activities includes caring and grooming for himself, playing cards, driving to the store or to visit his children, and spending time with his grandchildren. Plaintiff also testified that he tries not to over exert himself because, if he does, it causes pain. The Court recognizes that the ALJ found Plaintiff

12

not fully credible, but the ALJ discredits him in large part because of the great weight afforded to Dr. Shah's Class I rating.  This logic is circular.

Thus, the ALJ's reliance on Dr. Shah's Class I rating without any supporting findings from Dr. Shah as to Plaintiff's residual functional capacity was an error.  *See* Social Security Disability Law & Procedure in Federal Court § 3:47 ("[W]here a doctor's evaluation does not include a functional assessment of the claimant's abilities, nor does it opine about the claimant's limitations, it should not be used to support specific limitations included in the claimant's residual functional capacity."); *see also Miocic v. Astrue*, 890 F. Supp. 2d 1046, — (N.D. Ill. 2012)  ("[T]he ALJ may not play doctor and fill in evidentiary medical deficits.").  The ALJ should have obtained expert testimony or recontacted Dr. Shah on the question of what constitutes "ordinary physical activity" for purposes of the NYHA classification system, and should have further contacted Dr. Shah for an opinion regarding Plaintiff's residual functional capacity.  On remand, the ALJ must fill in these gaps in the medical evidence with acceptable medical opinions.

The Court recognizes that the NYHA classification rating may be relevant to the RFC analysis.  *See Perkins v. Astrue*, No. 12-2005, 2013 WL 123654, *2 (7th Cir. Jan. 10, 2013) (finding significant that the ALJ did not acknowledge that a cardiologist had characterized the claimant's heart failure as a Class III under the NYHA classification system);[1] *Williams v. Barnhart*, No 02 C 7035, 2003 WL 22247187, *3 (N.D. Ill. Sept. 29, 2003) (noting that the treating cardiologist had given a NYHA class rating of Class I in the medical background but not discussing the rating in the analysis); *Brown v. Massanari*, No. 00C6839, 2001 WL 1315075, at *2 (N.D. Ill. Oct. 26, 2001)

[1] The Court recognizes that this case is not to be cited under Seventh Circuit Rule 32.1.  However, because there are few available cases, much less published cases, even mentioning the NYHA classification ratings in the context of social security disability insurance benefits, the Court references this case only for the purpose of noting that the NYHA classification system was considered to be a relevant consideration.  The case has no precedential value.

(explaining that the ALJ noted the cardiologist's NYHA class rating but effectively rejected the rating to rely instead on the cardiologist's indication that the claimant could perform activities of "daily living," but criticizing the ALJ's reliance thereon because the activities of daily living were limited, such as bathing, dressing, cooking, and walking a short distance). However, without further explanation from an acceptable medical source as to what work-related residual functional capacity a person with a Class I rating is capable of performing, and in this case, specifically whether the Class I rating indicates that Plaintiff is capable of performing medium work, the great weight the ALJ gives to this classification opinion of Dr. Shah is untenable. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009);  *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2009); *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Brown*, 2001 WL 1315075, at *2.

The ALJ's reliance on the Class I rating is further weakened by the fact that Dr. Shah made that assessment on December 11, 2009.  Subsequently, on December 29, 2009, Plaintiff underwent a stress test for evaluation of coronary artery disease, but because he "could not exercise to adequate heart rate," the clinician had to induce stress pharmacologically. AR 308.  Although the radiology report findings were "no definite evidence of stress induced ischemia," "evidence of prior inferolateral wall myocardial infarction," and left ventricular systolic function in the range of 55%, *see* AR 286, the ALJ did not discuss the interplay between Plaintiff's inability to exercise to an adequate heart rate, the Class I rating, and the assignment of medium level work.  Similarly, the opinion of consultative reviewer Dr. Wenzler is tainted by Dr. Shah's Class I rating.  Dr. Wenzler, who did not examine Plaintiff, completed a Physical RFC Assessment form and found Plaintiff capable of medium work.  Dr. Wenzler identified the record evidence on which he based his conclusions, gave Plaintiff limited credibility, finding that the alleged severity of his cardiac and

14

hearing impairments is not supported by the current cardiology opinion and nuclear stress test, and gave "controlling weight" to Dr. Shah's NYHA Class I classification.

The ALJ did thoroughly discuss the fact that Plaintiff routinely denied shortness of breath or chest pain at his follow-up visits with Dr. Shah.  But, in light of Plaintiff's testimony that he self-restricts his daily activities to avoid such symptoms, the ALJ's significant reliance on those treatment notes is misplaced.  The ALJ has not discussed any evidence of record that Plaintiff does not experience symptoms of chest pain and shortness of breath when he increases his exertional level, as would likely be required to perform medium work.

The ALJ's failure to obtain complete medical evidence regarding Plaintiff's residual functional capacity and reliance instead on the NYHA Class I rating without explanation of its significance from a medical source is significant to whether Plaintiff is found disabled.  Because Plaintiff was of "advanced age" at the time of the decision, if he had been found unable to perform his past work and was otherwise limited to light work, he would have been found disabled under the Medical-Vocational Guidelines.  *See* 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.04.  Similarly, if the ALJ had limited Plaintiff to sedentary work because of his inability to walk more than 1 block before needing to rest for 30 minutes, the Medical-Vocational Guidelines would also direct a finding of disabled.  *Id.*, Rule 201.04.

## B.  Credibility

Plaintiff argues that the ALJ erred in determining Plaintiff's credibility, identifying several deficiencies.  The Commissioner contends that the ALJ ultimately concluded that Plaintiff was not fully credible based on the medical evidence, Plaintiff's work history, his habits, and his daily activities, as required by the regulations.

In making a disability determination, Social Security Regulations provide that the Commissioner must consider a claimant's statement about his symptoms, such as pain, and how the claimant's symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. In determining whether statements of pain contribute to a finding of disability, the Regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;
(5)     Treatment, other than medication, for relief of pain or other symptoms;
(6)     Other measures taken to relieve pain or other symptoms;
(7)     Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how the conditions affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

16

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ begins his credibility determination with a detailed listing of Plaintiff's alleged limitations. He notes that Plaintiff alleges inability to work due to the heart attack on August 26, 2009, arthritis, and a hearing impairment. Plaintiff does not argue that the ALJ improperly considered his credibility as to the arthritis or his hearing impairment; Plaintiff's objections are solely to the credibility given his complaints related to his heart condition. The ALJ noted that Plaintiff alleged he cannot lift more than 10 or 20 pounds and that certain movements cause chest pain. The ALJ also noted Plaintiff's allegation that he can only walk for one block before needing to stop and rest. The ALJ then summarized in detail Plaintiff's testimony regarding his limitations. The ALJ thoroughly considered the objective medical evidence, finding that it does not support any greater limitation than those set forth in the RFC. The ALJ went on to consider Plaintiff's work history, finding that his claim that he did not work because he did not want to excite himself was not supported by the medical evidence. He then found Plaintiff's motivation to work is "highly suspect" because he received unemployment benefits for a year and now is receiving early Social Security

17

retirement benefits.  The ALJ continued to discredit Plaintiff, finding that Plaintiff does not allege limitations in his activities of daily living that are consistent with a finding of disability.  The ALJ then takes issue with Plaintiff's failure to stop smoking.  Finally, the ALJ weighs the medical evidence and gives great weight to treating cardiologist Dr. Shah because he opined that Plaintiff has a Class I functional capacity under the NYHA classification system and gives "some weight" to the opinions of the state agency medical consultants.  AR 23. The ALJ concludes that, to the extent Plaintiff alleges limitations greater than those in the RFC, Plaintiff was not fully credible.

Although the ALJ's credibility determination was thorough and addressed all of the relevant considerations, the credibility determination is tainted by the weight the ALJ gave to Dr. Shah's opinion that Plaintiff has a Class I functional capacity under the NYHA classification system in finding Plaintiff not entirely credible, as discussed in the previous section.  In addition, because the case is being remanded for further proceedings on the ALJ's determination of Plaintiff's residual functional capacity regarding the NYHA Class I rating, the Court orders the ALJ to consider the following issues related to the credibility determination.

First, Plaintiff argues that the ALJ improperly based the credibility finding on Plaintiff's receipt of unemployment and early retirement benefits.  The Commissioner argues that Plaintiff isolates the ALJ's conclusion and ignores that the ALJ considered the evidence as a whole.  After a lengthy recitation of the medical record, the ALJ noted several other factors pursuant to SSR 96-7p in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms, including, in part, Plaintiff's work history and receipt of unemployment benefits.  The ALJ noted Plaintiff's work history, finding that Plaintiff was laid off in November 2008 and had not sought new work because Plaintiff did not want to excite himself.  The ALJ then found that the medical evidence did not

support Plaintiff's allegation that he needed to avoid excitement.  In addition, the ALJ noted that

Plaintiff had received unemployment benefits for approximately one year and that Plaintiff is now

receiving early Social Security retirement benefits.  As a result, the ALJ concluded that Plaintiff's

"motivation to work is highly suspect."  AR 22.

"It is not inappropriate to consider a claimant's unemployment income in a credibility

determination."  *Miocic*, 890 F. Supp. 2d at — (citing *Schmidt*, 395 F.3d at 745-46).  In *Schmidt*, the

Seventh Circuit Court of Appeals explains:

> [W]hile we have previously held that "employment is not proof positive of ability to
> work," *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir.1998), we are not convinced that
> a Social Security claimant's decision to apply for unemployment benefits and
> represent to state authorities and prospective employers that he is able and willing
> to work should play absolutely *no* role in assessing his subjective complaints of
> disability.

395 F.3d at 746.  Thus, it was proper for the ALJ to consider Plaintiff's receipt of unemployment

benefits and early retirement benefits as one among many factors in assessing credibility.

However, the negative inference the ALJ takes from this factor overlooks the possibility that,

if Plaintiff was capable of performing light or sedentary work, rather than the medium work the ALJ

found in the RFC, Plaintiff could honestly certify that he was ready and able to work for purposes

of unemployment benefits.  In that case, the ALJ's adverse inference would be improper.  On

remand, the ALJ shall discuss this possibility in light of further findings regarding Plaintiff's ability

to do medium work based on the NYHA classification.  Also, because Plaintiff took early retirement,

he receives reduced social security benefits.  Yet, the ALJ did not discuss how this fact could

actually *bolster* Plaintiff's credibility; if Plaintiff actually was able to work (whatever the level of

exertion), he may not have taken early retirement at a reduced benefit rate.  Although the ALJ may

ultimately still make a negative inference from this factor,[2] the ALJ must discuss this potential favorable inference in the credibility determination. Finally, for the first time in the reply brief, Plaintiff suggests that his receipt of unemployment benefits and early retirement was due to economic hardship. *See* Pl. Reply, p. 7. Because the issue was not raised in the opening brief, it is waived. However, because the Court is remanding for other reasons, the ALJ shall discuss the impact of Plaintiff's financial hardship in relation to his receipt of early retirement and unemployment benefits. *See Schmidt*, 395 F.3d at 746.

Second, Plaintiff argues that the ALJ improperly considered Plaintiff's failure to follow his doctor's recommendation to quit smoking. The Commissioner, citing cases from the Sixth and Eighth Circuit Courts of Appeals, contends, that "[it] is common sense that if a treating physician advises Plaintiff to stop smoking, then the physician has made a medical determination that Plaintiff's health would improve if he ceased smoking." Def. Br., p. 10. However, the Seventh Circuit Court of Appeals has held that, when taking into account a claimant's smoking, the ALJ must "properly set forth the effects of smoking tied to the record" to show that following the prescribed treatment (smoking cessation) would restore Plaintiff's ability to work. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000); *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). Moreover, the ALJ should also recognize the addictive nature of smoking. *See Shramek,* 226 F.3d at 813 ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. . . . [People] continue to smoke, not because they do not suffer gravely from [a given] disease, but because other factors such as the addictive

---

[2] The Court notes that the ALJ may come to the same conclusion given the ALJ's lengthy consideration of the medical record as well as the ALJ's consideration of the fact that, although Plaintiff was laid off from his job for almost a year before his heart attack, he did not seek work during that time period. Although, that factor must also be weighed against Plaintiff's testimony that he did not seek work because he did not want to overexert himself.

nature of the product impacts their ability to stop."). In this case, the ALJ did not identify any medical evidence that Plaintiff's chest pain, shortness of breath, and fatigue related to his heart condition would improve if he quit smoking at this juncture. Nor did the ALJ make a finding that the prescribed treatment would restore his ability to work. On remand, the ALJ is directed to conduct a proper analysis of Plaintiff's failure to quit smoking.

Third, Plaintiff argues that the ALJ found that his allegations regarding his chest pain and shortness of breath as well as the severity of his impairments "were not credible because of a *lack* of objective medical evidence." Pl. Br., p. 9 (citing AR 21) (emphasis added). This is an inaccurate restatement of the ALJ's finding. The ALJ found that the "objective medical evidence does not support any greater limitation to the claimant's work-related abilities than those in the [RFC]" and that "the medical evidence does not support the claimant's allegation of ongoing disabling chest pain and shortness of breath." AR 21. Plaintiff also argues that the ALJ should have considered his level of pain, medication, treatment, daily activities, and limitations and must justify the credibility finding with specific reasons supported in the record. The ALJ did conduct such an analysis, and did so thoroughly; he did not limit his analysis solely to the objective evidence.

The true crux of Plaintiff's argument is that the ALJ did not provide any analysis for how Plaintiff's reports of chest pain and shortness of breath that are noted in the record would affect his ability to work, including walking for six hours a day or lifting 50 pounds occasionally, which are required to perform the medium level work allowed for in the RFC. Plaintiff points to the stress testing and "other medical evidence in the record" that demonstrate that Plaintiff has reduced cardiac capacity and only a "fair" exercise capacity. Plaintiff specifically identifies two pieces of evidence. One is the final radiology report, which provides "[t]here is no definite evidence of stress induced

ischemia," "[t]here is evidence of prior inferolateral wall myocardial infarction," and "[t]he left
ventricular systolic function is in the range of 55%." AR 286. The second is the March 16, 2010
follow up treatment note of Dr. Shah, on which he noted in the "history of present illness" section:
"He has fair exercise capacity." AR 347. The ALJ addressed both pieces of evidence. He found
that "[a] subsequent stress test revealed no evidence of stress-induced ischemia and left ventricular
systolic function in the range of 55 percent. An echocardiogram and color flow Doppler indicated
normal left ventricular wall motion and systolic function, normal diastolic function and normal right
ventricular systolic function." AR 21. In the following paragraph, the ALJ discussed each treatment
note, including the March 2010 follow up visit with Dr Shah, noting not only the notation that he
had fair exercise capacity but also that patient reported "doing very well," with no chest pain,
shortness of breath, or other symptoms. AR 21; AR 347.

This evidence as well as the remainder of the evidence discussed by the ALJ but not
acknowledged by Plaintiff was discussed by the ALJ in support of his finding inconsistencies
between Plaintiff's complaints of pain or other impairments at the hearing and the record that
support the adverse credibility finding by the ALJ. For example, in considering Plaintiff's testimony
regarding his allegations of ongoing shortness of breath and chest pain, the ALJ noted Plaintiff's
assertions that he was in full compliance with his medication for shortness of breath and that certain
movements caused chest pain but that Plaintiff could not identify the medication. The ALJ then
considered the objective evidence in the months immediately following Plaintiff's heart attack that
showed that Plaintiff was doing well and had not reported experiencing any chest pain, shortness
of breath, palpitations, or other relevant symptoms to his treating physician. In addition, the
notations from the February 2010 consultative examination reported that Plaintiff experienced chest

pain with exertion but that he denied any shortness of breath, palpitations, or dizziness.  The ALJ found the lack of reporting these symptoms to treating physicians significant in discrediting Plaintiff's allegations: the "medical records indicate significant improvement in his symptoms after his heart attack, with no reported chest pain or shortness of breath reported to his treating cardiologist."  AR 21.

Plaintiff also notes that he testified that he experienced chest pain and heaviness that he rated an 8 or 9 out of 10 when he over exerted himself doing any physical activity, including simply walking too far, which was consistent with a diagnoses of coronary artery disease and a history of myocardial infarction.  Plaintiff also notes his representation on the "Disability Report - Adult - Form SSA-3368" form that lifting over 20 pounds caused him chest pain.  The ALJ acknowledged his testimony regarding his inability to lift more than ten or twenty pounds and walk more than one block.  However, the ALJ noted that the medical record revealed that the month after Plaintiff's heart attack Plaintiff could walk ten to fifteen minutes easily and that at a subsequent visit in December 2009, Plaintiff was more active and could again walk ten to fifteen minutes easily.

Although the Court finds no fault with the ALJ's discussion of the medical evidence, the Court agrees that the ALJ fails to explain how Plaintiff's complaints would affect his ability to perform medium work, including the requirements of medium work to walk for six hours a day or lift 50 pounds occasionally.  Even if a claimant's allegations of pain and limitations are not fully supported by the objective record, if the claimant indicates that pain is a significant factor in his inability to work, the ALJ must obtain the claimant's description of his daily activities by asking specific questions about the pain and how it effects the claimant.  *See e.g.*, *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) (citations omitted); *Villano*, 556 F.3d at 562 (citations omitted).  The ALJ

is required to investigate all avenues that relate to pain and must consider several factors "including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations . . . and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see also Luna*, 22 F.3d at 691.

Fourth, Plaintiff argues that the ALJ did not properly analyze his activities of daily living in the credibility determination by overstating his activities and improperly equating those activities with the ability to perform medium level work.  The Commissioner argues to the contrary that the ALJ never stated Plaintiff's activities indicated that Plaintiff can perform medium work.  Yet, this is precisely what the ALJ held: "In sum, the [] residual functional capacity assessment [for medium work] is supported by the medical findings, nature and frequency of treatment, the claimant's activities, opinion evidence and other factors discussed above."  AR 23-24.  Although the ALJ considers Plaintiff's daily activities in his credibility determination, which he then used to develop the RFC, the ALJ fails to explain how these activities demonstrate the severity of his impairments or equate to medium level work.

The ALJ concludes that Plaintiff did not allege limitations in daily activities consistent with a finding of disability, reasoning that Plaintiff has no problems with personal care, driving, shopping, and visiting children.  The ALJ also recognized that Plaintiff lives with relatives, does not have household responsibilities, and does not venture far in his neighborhood due to the character of the neighborhood rather than because of any physical limitations.  The ALJ found that Plaintiff's limitations were self-imposed on the ground that Plaintiff testified that Dr. Shah limited him to lifting ten pounds yet the ALJ found nothing in the medical record to support the imposition of that limitation.

First, Plaintiff's description of his minimal daily activities is not inconsistent with his disabling symptoms and does not establish that he has the ability to engage in medium level work. *See e.g., Zurawski*, 245 F.3d at 887 ("The ALJ should have explained the 'inconsistencies' between [the claimant's] activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence."); *Clifford*, 227 F.3d at 872 (finding that minimal daily activities do not establish that a claimant is capable of engaging in substantial physical activity"); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding that a claimant's ability to occasionally drive, shop, and do housework was an improper basis for the ALJ to find that the claimant could work).

For example, the ALJ failed to explain how he accounted for the testimony that Plaintiff does not perform household chores. Importantly, the ALJ does not discuss Plaintiff's testimony that he structures his activities in accordance with his limitations. *See* SSR 96-7p at *8; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as [a claimant] would be by an employer.") (citations omitted). Rather than explaining how Plaintiff's self-imposed limitations bolstered his credibility regarding his limitations, the ALJ's decision instead improperly minimized this evidence simply *because* they were self-imposed.

Due to his cardiac impairments, Plaintiff testified that he can only walk one block before requiring rest. The ALJ mischaracterizes the reason Plaintiff gives for not walking in his neighborhood, explaining "the claimant also testified that he does not walk far in his neighborhood because of the character of the neighborhood rather than due to any physical limitations." AR 23. This was not Plaintiff's testimony. Plaintiff testified that he does not venture far because he would

need to rest often due to his limitations. Implying that his neighborhood is not the safest, Plaintiff testified that he does not want to be sitting on the curb or leaning on a light post in his neighborhood. Thus, Plaintiff's testimony did pertain to his physical limitations, namely, Plaintiff's inability to walk distances without rest. Similarly, Plaintiff testified that he needs to lean on something after standing for too long to keep his balance, and the ALJ did not discuss that favorable testimony.

Last, the ALJ discredited Plaintiff's limitations by stating that, "[a]lthough the claimant testified that Dr. Shah limited him to lifting 10 pounds, the medical records do not support this testimony." AR 23. However, Plaintiff testified that he had to pay ninety-five dollars every time he visited Dr. Shah and that he could not afford to pay just for the verification from Dr. Shah. Because the ALJ does not discuss these two statements together; it appears that the ALJ did not fully consider Plaintiff's testimony in its entirety.

On remand, the ALJ is directed to address these deficiencies in the credibility determination.

### C. Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits, or, in the alternative, reverse the decision of the ALJ and remand this matter for additional proceedings. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ failed to develop the record and draw a logical bridge from the evidence to his conclusions. Although Plaintiff requests an award of benefits, he fails to present a developed argument in favor of doing so. The issues raised by Plaintiff warrant remand for resolution through further proceedings but do not warrant an outright award of benefits. Accordingly, reversal and remand for further proceedings is the proper remedy.

26

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 18] and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

SO ORDERED this 27th day of March, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record